UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES SMITH II,

    Plaintiff,

v.                                   Case No: 8:18-cv-1261-T-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, James Smith II, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on January 9, 2015, alleging disability beginning December 31, 2013. (Tr. 252-263, 264-269). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 183-185, 186-188, 191-195, 196-200). Plaintiff requested a hearing and, on June 12, 2017, a hearing was held before Administrative Law Judge Scott T. Morris ("the ALJ"). During the hearing, Plaintiff amended his alleged onset date to October 15, 2014. (Tr. 32-33). On September 6, 2017, the ALJ issued an Unfavorable Decision finding Plaintiff not disabled. (Tr. 7-23). Plaintiff requested review of the hearing decision to the Appeals Council. (Tr. 255-256). The Appeals Council denied review on April 20, 2018. (Tr. 1-6). The Commissioner's decision became final and Plaintiff therefore filed this civil action in the Middle District of Florida. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2014, the alleged onset date. (Tr. 12). At step two, the ALJ found that Plaintiff had the severe impairment of schizoaffective disorder, bipolar type.

(Tr. 12). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can perform simple, routine, and repetitive tasks that are not done at a production rate pace (e.g., assembly line work); frequent interaction with supervisors and coworkers; and no interaction with the general public.

(Tr. 15). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 18).

At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 18). Relying on the testimony of a vocational expert ("VE"), the ALJ found that an individual with Plaintiff's age, education, work experience and RFC could work as laundry attendant, kitchen helper, and cleaner. (Tr. 19). The ALJ concluded that Plaintiff was not under a disability from October 15, 2014, the amended alleged onset date, through the date of the decision, September 6, 2017. (Tr. 19).

**II.     Analysis**

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by improperly finding that Plaintiff was not compliant with his prescribed medications; (2) whether substantial evidence supports the ALJ's subjective complaint analysis; (3) whether the ALJ's mental RFC finding was supported by substantial evidence; and (4) whether the ALJ erred by failing to properly consider the side effects of Plaintiff's medication. The Court will address each issue in turn.

### a) Whether the ALJ erred by improperly finding that Plaintiff was not compliant with his prescribed medications.

Plaintiff argues that the ALJ erred by finding that Plaintiff was non-compliant in taking his prescribed medications. (Doc. 26 p. 19). Plaintiff contends that besides his admissions to St. Joseph's Hospital and Gracepoint Crisis Center on October 17, 2014 for non-compliance with medication, the record shows that Plaintiff took his medication as prescribed unless there was a problem with them not working or side effects. (Doc. 26 p. 19-20). Further, Plaintiff argues that the ALJ erred by citing to Plaintiff's GAF scores to support the ALJ's finding that Plaintiff's symptomology worsened when he did not take his medication. (Doc. 26 p. 20). Plaintiff argues that although the record shows fluctuations in Plaintiff's GAF score, there is no correlation to whether he was taking his medication or not. (Doc. 26 p. 21). Further, Plaintiff argues that the ALJ erred by violating SSR 82-59 because the ALJ based his determination that Plaintiff was not disabled on Plaintiff's non-compliance. (Doc. 26 p. 21). In response, Defendant argues that substantial evidence supports the ALJ's mental RFC finding and that Plaintiff overstates the significance of the ALJ's alleged errors. (Doc. 26 p. 23).

The Court does not find that remand is necessary because the ALJ improperly determined that Plaintiff was non-compliant with his medication. The record shows that Plaintiff was hospitalized in October 2014 after medication non-compliance, which included reportedly ceasing his medications—which were effective—for about a year prior, and recently taking his mother's Xanax and an "unknown amount of unknown pills." (Tr. 503, 525, 527, 598). These records indicate that Plaintiff was treated for benzodiazepine overdose. (Tr. 13, 499-500, 502, 505). Plaintiff reported his hallucinations went away with medications just fine until he stopped taking them (Tr. 527), and, later that month, Plaintiff reported his goals were to get a job painting and to take his medications so he could be stable. (Tr. 541). Plaintiff's hospitalization records from

October 2014 and July 2015 showed improvement in his symptoms and GAF scores with treatment, and without side effects (Tr. 530-31, 626, 631, 634). Medical records from January and March 2015 document that Plaintiff reported he felt "stable" and "well" on his medications. (Tr. 544, 544, 549, 571). In February 2017, Plaintiff's father reported some improvement in his mood and Plaintiff admitted his current medication regimen was effective. (Tr. 592). Given this evidence, the Court finds that the ALJ committed no error in citing Plaintiff's improvement with treatment, when compliant, as one factor supporting the mental RFC.

Plaintiff is correct that the ALJ incorrectly stated that Plaintiff had not had an inpatient stay in several years since he tried ceasing his treatment. The record shows that Plaintiff was hospitalized in July 2015 at Gracepoint CSU for a suicide attempt. This erroneous statement, however, does not necessitate remand as the ALJ discussed—and did not ignore—the July 2015 hospitalization. (Tr. 13). Elsewhere in his decision, the ALJ correctly observed that Plaintiff's "hospital stays have been few, and seemingly ended in 2015," showing the ALJ recognized Plaintiff had a hospitalization in 2015. (Tr. 14).

In addition, while the ALJ also stated that a failure to follow treatment can be a basis for denial (Tr. 17), the decision shows he did not base his denial of Plaintiff's claim solely on a failure to follow treatment. As shown above and in the ALJ's decision, Plaintiff's treatment compliance was simply one factor the ALJ considered in evaluating his allegations of disabling mental symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v)(treatment relevant in evaluating subjective complaints).

Finally, the Court does not find that remand is necessary because the ALJ violated SSR 82-59. SSR 82-59[1] applied in situations in which a claimant would be found to be disabled but the

---

[1] SSR 82-59 applied at the time of the ALJ's decision. It has since been rescinded and replaced

claimant fails, without justifiable cause, to follow treatment prescribed by a treating source. In this case, the ALJ made no finding that Plaintiff would be found disabled but was unjustifiably failing to comply with prescription, but instead considered Plaintiff's non-compliance as one factor in considering Plaintiff's mental RFC.

### b) Whether substantial evidence supports the ALJ's subjective complaint analysis.

Plaintiff argues that the reasons given by the ALJ for finding Plaintiff's subjective complaints only partially consistent with the record are legally insufficient and factually incorrect. (Doc. 26 p. 26-28). Plaintiff argues that the ALJ erred by basing his finding on the fact that Plaintiff creates and sells artwork and because Plaintiff voluntarily left his job as a Publix grocery bagger. (Doc. 26 p. 26-28). Plaintiff contends that there is no evidence that Plaintiff created or sold artwork after the amended alleged onset date and that Plaintiff left his job at Publix because he was feeling overwhelmed and stressed with the job as evidenced by his Baker Act three days after he quit. (Doc. 26 p. 27). Finally, Plaintiff argues that the ALJ incorrectly characterizes Plaintiff's social interactions and relations with his family to find his subjective complaints less credible. (Doc. 26 p. 27). In response, Defendant argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.

The Eleventh Circuit has established a three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms. The standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (2) that the objective determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater*, 67 F3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel*, 185 F.3d 1211,

---

by SSR 18-3p effective October 29, 2018.

1215 (11th Cir. 1999). If the "ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ refuses to credit subjective symptoms and such testimony is critical, the ALJ must articulate specific reason for questioning the claimant's credibility. Failure to provide adequate reasons for discrediting subjective testimony "mandates that the testimony, as a matter of law, be accepted as true." *Cannon v. Bowen,* 858 F.2d at 1541, 1545 (11th Cir. 1988).

Here, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 16). In support of his finding, the ALJ discussed and the record supports the following: Drs. Davis and Tessler's opinions that Plaintiff retained some mental abilities, contrary to his allegations of mental disability (Tr. 17, 128-30, 159-61); the lack of any medical opinion from an examining or treating source contradicting Drs. Davis and Tessler's opinions (Tr. 18); the evidence Plaintiff could control his symptoms with proper treatment (Tr. 15, 527, 528-31, 538, 541, 544, 549, 565, 567, 571, 577, 587, 592, 632, 634); documentation of Plaintiff's intermittent non-compliance with prescribed treatment (Tr. 16, 393, 503, 527, 538, 565, 598); the evidence Plaintiff left his job voluntarily because he did not want to be to be around others, rather than being fired for performance issues (Tr. 15, 565); the evidence he participated in activities such as making art and using technology, despite his allegations of more limited activities of daily living at the hearing (Tr. 14-15, 44, 46, 528, 530, 618); his ability to maintain relationships with his family, a former

coworker, and a former schoolmate (Tr. 15, 54, 528, 537, 618); the ALJ's observation that Plaintiff was able to go through the hearing without panicking, despite his allegations of greater mental symptoms (Tr. 15); and mental health treatment notes showing, among other things, appropriate thought content. (Tr. 14-15, 525, 569, 571, 573, 575, 578, 582-83, 587, 589, 592, 594, 648).

The Court finds no error in the ALJ's discussion of Plaintiff's artwork and his work at Publix. As Defendant notes, the record shows that in October 2014, treatment notes indicate that Plaintiff mentioned to the staff "many times" his side-job and hobby of selling his artwork. (Tr. 530). Similarly, a July 2015 treatment note documented Plaintiff participated in hobbies/activities including art. (Tr. 618). Although Plaintiff asserts his 2014 statement he was working as an artist was not credible because he was psychotic, this assertion, made only by his counsel, is unsupported by any medical opinion or other evidence confirming this statement was unreliable on this basis. Additionally, the Court finds no error in the ALJ's consideration of Plaintiff's relations to his family and friends. the record indicates Plaintiff reported his relationships with his family and friends "are the best" and he "very much so!" felt he had supportive relationships (Tr. 528); he had good/supportive relationships with family and friends (Tr. 618); and he visited with a former coworker and schoolmate. (Tr. 54).

As to the ALJ's consideration of Plaintiff's reasons for leaving his job at Publix, the ALJ mistakenly stated that Plaintiff left his job because Plaintiff would not give him full-time hours. This statement, while factually unsupported by the record, does not cause the ALJ's entire analysis of Plaintiff's subjective complaints to be in error. As substantial evidence supports the ALJ's analysis of Plaintiff's subjective complaints, the Court finds it appropriate to affirm the ALJ's decision.

**c) Whether the ALJ's mental RFC finding was supported by substantial evidence.**

Plaintiff argues that the treatment records from Gracepoint Mental Health where Plaintiff received monthly treatment from October 14, 2014, through June 6, 2017 support much more severe mental limitations than the ALJ assigned in the case. (Doc. 26 p. 32). Plaintiff argues that the ALJ erred by failing to discuss the majority of Plaintiff's treatment records in any meaningful way in order to allow a reviewing court to discern whether these records were properly considered. (Doc. 26 p. 32). In addition, Plaintiff argues that the ALJ seems to not have realized that Plaintiff was hospitalized in July 2015 for a suicide attempt because the ALJ incorrectly stated that Plaintiff had no other inpatient stays for years since he stopped treatment prior to his October 2014 crisis unit admission. (Doc. 26 p. 33). Finally, Plaintiff argues that the ALJ did not even mention the content of the four adult function reports completed by Plaintiff and his mother which thoroughly describe Plaintiff's mental limitations. (Doc. 26 p. 33). In response, Defendant argues that substantial evidence supports the ALJ's mental RFC finding. (Doc. 26 p. 36).

The ALJ must take into account evidence which is favorable as well as unfavorable. *Foote v. Chater* 57 F. 3d 1553, 1560 (11th Cir. 1995). In determining whether a Plaintiff can return to her past work, the ALJ must determine the claimant's RFC using all relevant medical evidence in the case. *Phillips v. Barnhart*, 357 F. 3d 1232, 1238 (11th Cir. 2004). A decision is not based on substantial evidence which focuses on one aspect of the evidence while disregarding other contrary evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Although there is no "rigid requirement that the ALJ specifically refer to every piece of evidence in his decision", the ALJ must still discuss enough to "enable the district court to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F. 3d 1206, 1211 (11th Cir. 2005). Any failure to provide the reviewing court with sufficient factual basis for determining that proper legal

principles have been followed mandates reversal. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

In this case, the Court finds that the ALJ's mental RFC evaluation is supported by substantial evidence. As noted above, the ALJ based his RFC finding on such evidence as Drs. Davis and Tessler's opinions that Plaintiff retained some mental abilities, contrary to his allegations of mental disability (Tr. 17, 128-30, 159-61); the lack of any medical opinion from an examining or treating source contradicting Drs. Davis and Tessler's opinions (Tr. 18); the evidence Plaintiff could control his symptoms with proper treatment (Tr. 15, 527, 528-31, 538, 541, 544, 549, 565, 567, 571, 577, 587, 592, 632, 634); documentation of Plaintiff's intermittent non-compliance with prescribed treatment (Tr. 16, 393, 503, 527, 538, 565, 598); the evidence Plaintiff left his job voluntarily because he did not want to be to be around others, rather than being fired for performance issues (Tr. 15, 565); the evidence he participated in activities such as making art and using technology, despite his allegations of more limited activities of daily living at the hearing (Tr. 14-15, 44, 46, 528, 530, 618); his ability to maintain relationships with his family, a former coworker, and a former schoolmate (Tr. 15, 54, 528, 537, 618); the ALJ's observation that Plaintiff was able to go through the hearing without panicking, despite his allegations of greater mental symptoms (Tr. 15); and mental health treatment notes showing, among other things, appropriate thought content. (Tr. 14-15, 525, 569, 571, 573, 575, 578, 582-83, 587, 589, 592, 594, 648). Defendant argues that there is no rigid requirement that the ALJ refer to every piece of evidence in his decision. (Doc. 26 p. 36).

While Plaintiff argues that the ALJ failed to properly evaluate the evidence from Gracepoint, the ALJ's decision shows that he considered this evidence in evaluating Plaintiff's mental RFC. *See* (Tr. 13). In any event, as noted above, even if the evidence preponderates against

the Commissioner's findings, the court must affirm if the decision reached is supported by substantial evidence. *See Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). Because substantial evidence supports the ALJ's mental RFC finding, the Court affirms his finding.

### d) Whether the ALJ erred by failing to properly consider the side effects of Plaintiff's medication.

Plaintiff argues that the ALJ erred by failing to consider how the side effects of Plaintiff's medications affect his ability to concentrate and stay on task. (Doc. 26 p. 37-38). Plaintiff argues that although the ALJ acknowledged Plaintiff's complaints of side effects, the ALJ did not explain why he did not consider them in formulating the RFC. (Doc. 26 p. 38). In response, Defendant argues that the ALJ properly found Plaintiff's subjective complaints, including complaints of side effects, only partially credible. (Doc. 26 p. 39).

Here, as Plaintiff acknowledges, the ALJ noted Plaintiff's subjective complaints that his medication caused him to be drowsy, sleepy, nauseated and lightheaded. (Tr. 16). As explained above, substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not as limiting as alleged. Further, the medical record shows that Plaintiff at times specifically denied side effects. (Tr. 565, 634). In addition, contrary to Plaintiff's complaints of sleepiness caused by medication, medical records indicate Plaintiff was alert and/or behaving normally. (Tr. 538, 565, 569, 571, 573, 575, 579, 583, 587, 589, 620). For these reasons, the Court does not find it appropriate to remand for the ALJ to address Plaintiff's alleged side effects at greater length.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 2, 2019.

*Douglas N. Frazier*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties